JOHN P. O'MALLEY, Appellee, v. DILLENBECK LUMBER Co., and CHICAGO, MILWAUKEE & ST. PAUL R. R. Co., Appellants.

**Highways:** DEDICATION BY PAROL: EVIDENCE. A highway may be dedicated by parol without deed or other written evidence thereof, but the intent to dedicate must clearly appear and the acts and circumstances relied upon to show intent must be unequivocal and convincing. Evidence held insufficient to show dedication.

*Appeal from Perry Superior Court.*—HON. W. H. FAHEY, Judge.

THURSDAY, FEBRUARY 11, 1909.

ACTION at law to recover damages because of the acts of the defendants in obstructing an alleged public highway. Verdict and judgment for the plaintiff for the sum of one cent, and the defendants appeal.—*Reversed.*

*White & Clarke* and *Cook, Loomis & Tourtellot,* for appellants.

*Shortley & Kelly* and *J. J. Halloran,* for appellee.

WEAVER, J.—On the line of the defendant railway company's road in Dallas County, Iowa, is a small station known as "Bouton." The railway there extends east and west. The station is on the south side of the track, and immediately west of the platform the railway yard is crossed by the principal street of the village extending north and south. On the north side of the right of way, and immediately west of the north and south street, the railway company owns an additional strip about one hundred and twenty-five feet in width and eight hundred feet in length, the east portion of which, in part at least, has been occupied by the defendant lumber company with its sheds and other conveniences of a lumber yard. Immediately north of the strip above described is a tract of unplatted land owned by the plaintiff, whose residence is upon a lane extending north from the north line of said strip at a point some forty rods west of the north and south street first above mentioned. Between the lane on which plaintiff resides and said first-mentioned street, where all the business houses are located, there is no direct convenient connecting street or highway, unless· it be the one in controversy, which we now undertake to describe. It is the claim of plaintiff that there is a public way sixty feet in width extending along the line between his land on the north and the railway company's premises on the south; the partition line between them being the center of such way. He alleges that the same was established as a public road first by the consent and dedication of himself and the railway company, and that soon thereafter a petition for its establishment by public authority was filed with the county auditor, who appointed a commissioner to

view the proposed route and report upon its advisability, and that said commissioner did report in favor of locating and establishing a public road from the main street of the village hereinbefore described extending west along the line between plaintiff's land and the railway strip above described a distance of fifty-four rods, thence south to connect with a road running east and west on the south side of the railway right of way. He further alleges that, after due service of notice by publication to interested parties, the board of supervisors accepted the dedication and established the proposed road as by consent. This road he alleges the defendants have obstructed by buildings and otherwise thus interfering with his free passage to and from his home and with the comfortable use and enjoyment of his property. The defendants answer jointly denying the allegations of the petition. In giving the case to the jury, the court withdrew from their consideration the matter of the alleged establishment of the road by the board of supervisors.

From this statement it is at once apparent that the question whether there is any evidence in the record to support a finding of the establishment of the alleged road by some act or agreement of dedication on the part of the railway company is of fundamental importance. A reading of the entire record convinces us that in this essential respect the plaintiff's case is fatally deficient. The only evidence presented which is claimed to show any express agreement to dedicate this road as a public way is to be found in an alleged conversation between plaintiff and one Gibson, division superintendent of the railroad at that point, which is said to have occurred about the year 1897. Plaintiff's own testimony on the subject is as follows:

I lived in and about Bouton in 1867, and up to the spring of 1901, when I moved to Perry. Was in a gen-

eral store business, grain, lumber, and tile business, and did considerable amount of shipping with the railway company and was personally acquainted with the officers of the company that visited that town.   About the time when I was in business I had some conversation with Mr. Gibson, division superintendent of the Milwaukee Railway Company, in reference to the highway.   When we first talked about this proposed road, we also contemplated building a lumber shed next the track, north of the side track and west of the highway going north and south.   The railroad company, or Mr. Gibson, they objected to the shed going through at that place as it would cut them out of entering their ground west of that shed.   They used the ground west of the shed for loading grain, and general purposes, and this shed, if built where we finally did build it, would cut them out from the use of that ground.   To overcome that, I proposed to lay out this road going west so they could use it and get up to their grounds and the depot could use it.   I can not give the exact words of Mr. Gibson's reply.   He thought it would be all right. And on cross-examination he repeats:   I do not know just the language, only I said we better establish a highway. I knew the company claimed to own that land.   I do not think I asked Mr. Gibson to sign the petition.   I showed the petition to the agent, but did not ask him to get Mr. Gibson to sign it.   I do not remember the exact language of the conversation with Mr. Gibson, but the substance was, 'Well, we will establish a highway,' meaning the railroad company and us.   I did not ask him, nor in any manner attempted to get him, to establish that highway, nor to sign any petitton, nor take any steps toward it.   I knew that Mr. Gibson would not sign any papers and would not do anything in the way of making a highway or giving any consent to highways, but when he knew it was going through, he offered no objections.

This is the sum total of the plaintiff's case so far as any alleged express agreement of consent on the part of the company is concerned.   That plaintiff himself did not rely on this conversation as a sufficient dedication is shown by the fact that he soon followed it up by a petition to

the board of supervisors to establish a public road over the same route, but the establishment thus procured proved to be invalid for want of proper notice upon the parties. Turning to the proved circumstances from which it is sought by implication to show a dedication, they may be briefly stated as follows: About the time of the abortive attempt to secure the establishment of the road by the board of supervisors, plaintiff moved the fence which had stood on the south boundary of his premises, thirty feet to the north. A year later a road supervisor notified the company to put in a crossing at the point where the alleged road, after turning south, crossed the track. This notice was not complied with, but three or four years later, at the request of the road supervisor, and upon condition that he would prepare the approaches on either side, the company's roadmaster planked the crossing. For a long time prior to any suggestion being made for the establishment of a public way along this route, said way had been used by the public to a considerable extent. Neither before nor after the alleged dedication did the travel confine itself to any beaten track, but spread over the open grounds of the railway company, except as the lines converged at the place of crossing the track on the west and the opening north of the lumber sheds at the east end. Aside from such inferences as may be fairly drawn from this situation, we find nothing whatsoever to indicate any intention on the part of the railway company to dedicate a public highway. None of its acts are inconsistent with the theory of a permissive use or license to the public to pass over its unfenced grounds. At the very most the planking of the crossing is just as consistent with the theory of the company's willingness to accommodate the licensed travel, which the evidence shows was accustomed to diverge in that direction across the unplanked track, as with any intention to surrender the way to public control. Indeed, all the conduct of the railway company, even as revealed

by the plaintiff's own statements, tends strongly to show careful abstention on the part of its agents from any act or understanding which would bind it to a dedication of a public way.

Under our statute (Code, section 3004) the mere use of such way by the public, however long continued, can not be construed as adverse to the owner of the title. That a highway may be dedicated by parol, without deed or other written evidence thereof, is to be admitted; but it is a cardinal principle of the law on this subject that the intent to dedicate must clearly appear, and the acts and circumstances relied on to prove such intent must be unequivocal and convincing. *Morrison v. Marquardt,* 24 Iowa, 35; *Harris v. Commonwealth,* 20 Grat. (Va.) 833; *Graham v. Hartnett,* 10 Neb. 517 (7 N. W. 280); *McMannis v. Butler,* 51 Barb. (N. Y.) 436; *Jones v. Phillips,* 59 Ark. 35 (26 S. W. 386); *City v. Railroad Co.,* 152 Ill. 561 (38 N. E. 768); *Weiss v. Borough,* 136 Pa. 294 (20 Atl. 801). The evidence on the part of the plaintiff does not measure up to this standard. It follows of necessity that the claim of a statutory establishment of a road having been withdrawn from the jury by the trial court, and the showing made being in the judgment of this court insufficient to sustain a finding of dedication by the railway company, a new trial must be ordered.

There is very serious question whether, assuming the existence of the road as claimed by the plaintiff, he has suffered any such special damage from its alleged obstruction as entitles him to maintain an action for damages; but, in view of our conclusion upon the matter of dedication, we do not undertake its discussion. The result reached renders it unnecessary to rule on appellant's motion to strike the amended abstract.

For the reasons stated, the judgment appealed from is *reversed.*